UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KAREEM DAVENPORT, #M49922,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-cv-00852-GCS** |
| | ) | |
| **MICHAEL BAKER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Kareem Davenport brings this civil rights action pursuant to 42 U.S.C. § 1983 for an alleged violation of his rights at Menard Correctional Center while in custody of the Illinois Department of Corrections ("IDOC"). (Doc. 19). Davenport alleges that Defendant Michael Baker used excessive force against him when he yanked Davenport to the ground and "open-hand" slapped Davenport several times while Defendants Suhr and Schweizer watched. (Doc. 19, p. 8). Pending before the Court is a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Baker. (Doc. 47). For the reasons explained below, the Court **DENIES** Defendants' Motion for Summary Judgment.

PROCEDURAL BACKGROUND

Davenport filed this lawsuit on March 22, 2024, (Doc. 1), filed an Amended Complaint on August 14, 2024, (Doc. 14), and filed a Second Amended Complaint on

February 3, 2025. (Doc. 19). The Second Amended Complaint alleged that on September 1, 2021, Defendant Baker yanked Davenport to the ground by his locks and "open-hand" slapped Davenport multiple times while Defendants Suhr and Schweizel watched. (Doc. 19, p. 8). The Court screened Davenport's complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on two claims:

**Count 1:** **Eighth Amendment claim against Baker for using excessive force against Davenport.**

**Count 2:** **Eighth Amendment claim against Suhr and Schweizer for failing to intervene and protect Plaintiff from the unauthorized use of force by Baker.**

**Count 5:** **Illinois state law claims for assault and/or battery against Baker.**

(Doc. 21).

On November 17, 2025, Defendants Baker, Schweizer, and Suhr filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 47). Davenport filed a response on December 15, 2025. (Doc. 57). The Motion for Summary Judgment is now ripe for the Court's review.

## FACTUAL BACKGROUND

Davenport alleges that he submitted two grievances regarding the incident on September 1, 2021, and did not receive a response to either. (Doc. 63, p. 11-12). Davenport submitted the first grievance within a week after September 1, 2021, while in segregated housing. (Doc. 63, p. 12). While in segregated housing, an officer comes around with a drop box to collect grievances from inmates. (Doc. 63, p. 11). Davenport testified that this grievance is the only grievance he submitted in segregated housing for which he did not

receive a response. (Doc. 63, p. 18).

Davenport filed the second grievance about a week before November 1, 2021, while housed in Menard's Medium Security Unit. (Doc. 63, p. 12). Davenport submitted the second grievance by placing it in a drop box himself; the front of the drop box was locked, but the back had broken off. (Doc. 63, p. 13). At the same time Davenport submitted his second grievance regarding the September 1, 2021, incident, he also submitted a medical grievance. (Doc. 63, p. 16). Davenport's medical grievance went through, while the grievance pertaining to the September 1, 2021, incident did not. (Doc. 63, p. 16). Davenport wrote a letter to the Administrative Review Board ("ARB") in early November 2021, after he did not receive a response to either grievance. (Doc. 63, p. 14, 19). Neither Davenport's grievance record with Menard nor his ARB record show a grievance reported regarding the September 1, 2021, incident involving Defendants Baker, Suhr, or Schweizer. (Doc. 63, p. 27-29, 37-38).

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgement, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a

motion for summary judgement. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id.* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id*.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Davenport is an inmate in the IDOC and is required to correctly follow the regulations contained in the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Failure to exhaust administrative remedies is an affirmative defense. The party asserting the defense bears the burden of proof; the burden is not on an inmate to show that administrative remedies were unavailable. *See Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023).

The IDOC Grievance Procedures require that an inmate first file a grievance with

a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within 30 days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officer's report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director, who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Exhaustion of administrative remedies is an affirmative defense for which Defendants the bear the burden of proof. *See Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 763 (7th Cir. 1998). The Court finds that Defendants have not carried their burden as to the alleged grievances filed by Davenport regarding the incident on September 1, 2021.

Here, Davenport had to give his first grievance to a corrections officer, at which point he could do nothing more to ensure that it was filed. Davenport's second grievance, filed by Davenport himself while in the Medium Security Unit, was placed into a drop box with its back removed. At the point at which Davenport either handed over his first grievance to an officer or placed the second grievance in a drop box, both grievances were out of Davenport's control. A prisoner has no choice but to entrust his grievances to prison officers once he has filed them. *See Dole,* 438 F.3d at 812.

Defendants assert that Davenport made no effort to exhaust his administrative remedies against Defendants before filing suit because the ARB has no record of either of Davenport's grievances. (Doc. 47, p. 6). Their witnesses at the evidentiary hearing testified that there were no records that Davenport had filed a relevant grievance. But that fact does not rebut, contradict, or even address Davenport's claim. Davenport alleges that his grievances were thrown out or lost before both were put into the system. If Davenport's grievances had been thrown out or lost, then there would be no record of either grievance by the grievance office or the ARB. Defendants have not presented any evidence to challenge Davenport's assertion that his grievances were thrown out or lost beyond there being no record. Because Defendants did not meet their required burden of proof on exhaustion, they are not entitled to summary judgment on the issue of exhaustion.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Defendants' Motion for Summary Judgment (Doc. 47). The Court will enter a merits scheduling order in due course.

**IT IS SO ORDERED.**

**DATED: September 30, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.30 11:30:35 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**